**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **JENNIFER SLOAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **AMERICAN BRAIN TUMOR** ) | <u>**Jury Trial Demanded**</u> |
| **ASSOCIATION, an Illinois Not-For-Profit** ) | |
| **Corporation,** ) | |
| ) | |
| **Defendant.** ) | |

<u>**COMPLAINT**</u>

Comes Now Plaintiff, Jennifer Sloan, by and through her attorneys, and complaining of Defendant, American Brain Tumor Association, alleges the following.

<u>**NATURE OF THE ACTION**</u>

1.     For several years Jennifer Sloan was enjoying a successful career as an executive with the American Brain Tumor Association ("ABTA"), most recently in the position of Director of Corporate & Community Engagement.  That success ended when, following a contentious meeting, the President & CEO of the ABTA, Elizabeth Wilson, levied several baseless accusations against Plaintiff and put her on an extended, unpaid suspension. Plaintiff complained to the Board of Directors, stating that the unpaid suspension was a violation of federal law, and asked for intervention.  When her complaint was ignored, Plaintiff retained an attorney.  Within hours of being notified Plaintiff had complained that she had acted illegally and retained an attorney to press the complaint, Elizabeth Wilson sent a company-wide email terminating Plaintiff's employment. Plaintiff now brings this action to redress the conduct under the anti-retaliation protections afforded to her by the Fair Labor Standards Act, 29 U.S.C §215(a)(3).

## JURISDICTION & VENUE

2.      Jurisdiction is provided by 28 U.S.C. §1331, as the claim involves a violation of the Fair Labor Standards Act, 29 U.S.C. §201 *et seq*.

3.      This action properly lies in this district pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this claim occurred in this judicial district.

## PARTIES

4.      Plaintiff, JENNIFER SLOAN (hereinafter "Plaintiff"), is a resident of Chicago, Illinois, and was formerly employed by Defendant.

5.      Defendant, AMERICAN BRAIN TUMOR ASSOCIATION (hereinafter "Defendant," or "ABTA"), is an Illinois not-for-profit corporation with its principle place of business in Chicago, Illinois.

## FACTS

6.      Plaintiff was hired by ABTA in September 2014 as an Advancement Manager.

7.      Throughout her employment with ABTA, Plaintiff received multiple commendations, raises, and promotions, and received multiple "above expectations," and even "outstanding" performance reviews.

8.      On or around September 16, 2015, in part because she did an "excellent job," and because "stewardship, compassion, and community [were] three areas that Jennifer excel[led] in both internally and externally," Plaintiff was given a 3% merit raise. Plaintiff was again given another 3% raise on or around September 1, 2016.

9.      On or around January 26, 2016, Plaintiff was promoted to Associate Director of Corporate and Volunteer Engagement and shortly thereafter again promoted, to Director of Corporate & Community Engagement, on or around February 27, 2016.

10.     As part of Plaintiff's job duties as the Director of Corporate & Community Engagement, she was often required to create presentations and summarize the progress of the organization and her department to present to the ABTA Board and general staff. Such duties often required Plaintiff to work alongside and at the direction of Elizabeth Wilson, President and CEO of ABTA.

11.     While the relationship between Plaintiff and Wilson began professionally, it quickly began to deteriorate. Repeatedly, in response to Plaintiff's presentations to the ABTA staff – presentations that were met with praise from the Board – Wilson would become confrontational, taking issue with choices they had previously agreed on and would antagonize Plaintiff in front of her colleagues.

12.     On or around February 22, 2017, Plaintiff received a calendar invite from Wilson to set a meeting for the following day in which they would discuss Moves Management Training and a forthcoming Staff Retreat.

13.     On February 23, 2017, although Plaintiff was prepared to discuss the scheduled topics, the events were never discussed. Instead, Wilson used the meeting to air her own personal grievances against Plaintiff, including that Plaintiff "bring[s her] personal problems to work."

14.     Plaintiff protested Wilson's comments and vehemently expressed her disbelief at the unfounded allegations. Dismayed at the nature of the accusations Wilson levied against her, Plaintiff told Wilson that she was uncomfortable being attacked this way, especially since ABTA had no HR department for her to turn to.

15.     Wilson then ordered Plaintiff to leave the office for the rest of the day.

16.     The next day, February 24, 2017, Plaintiff worked the full morning without issue.

17.     Later in the afternoon, Wilson, following notes she had prepared for herself, entered Plaintiff's office, began discussing the meeting of the previous day, and stated, "I've decided on a six-day suspension without pay." She informed Plaintiff that the unpaid suspension was effective immediately and Plaintiff was to return to work on March 7, 2017.

18.     In response to the unpaid suspension, Plaintiff again objected and complained about the lack of Human Resources for her to contact, stating, "I don't even know if you can do this." Wilson promptly responded, declaring, "I'm the President CEO, I can do whatever I want."

19.     During these discussions, there was no mention of termination. Indeed, Wilson's personal notes, made for herself in preparation for the meeting, specifically stated that Wilson would "inform [Plaintiff's] team that [she] will be out of the office for the next week," as Plaintiff was set to return to ABTA on March 7, 2017.

20.     The next morning, Saturday, February 25, 2017, Plaintiff emailed four members of the ABTA Board, including Carla Verner, Jeff Fougerousse, Craig Stokley, and Brian Wilson complaining about her treatment and the six-day, unpaid suspension issued by Wilson.

21.     In her email to the Board, Plaintiff addressed the "disciplinary action [Wilson] threatened against me yesterday," unequivocally stating that "it is my understanding that is against federal law," and that she was contacting them "in hopes that the Board will investigate this further."

22.     Plaintiff specifically noted that she was reaching out to the Board because there was no HR department for her to contact.

23.     Plaintiff received no response from the Board.

24.     Because of the lack of response from the Board, Plaintiff retained an attorney.

25.     On March 2, 2017, Plaintiff's attorney contacted the Board, noting its lack of response to Plaintiff's February 25, 2017, complaint and re-asserting her belief in the illegality of the suspension.

26.     Upon receipt of the email, on March 3, 2017, Jeff Fougerousse, Immediate Past Chair of ABTA, forwarded the email and correspondence from Plaintiff's attorney to Wilson.

27.     Wilson received this email, informing ABTA that Plaintiff had retained counsel, midday on March 3rd.

28.     On March 3, 2017, at 3:42 p.m., within hours after Wilson had become aware that Plaintiff had complained her conduct was illegal and had retained an attorney, Wilson sent out an email to the entirety of the ABTA staff, stating, "[e]ffective immediately, Jennifer Sloan is no longer employed by the ABTA."

29.     Plaintiff was an exempt employee paid on a salary basis under the Fair Labor Standards Act, 9 U.S.C. §201 *et seq.*

30.     The FLSA and its implementing regulations by the U.S. Department of Labor include a general rule against salary deductions and also define permissible exceptions to the general rule to specify when salary deductions can be made.

31.     Under the FLSA and the U.S. Department of Labor regulations, salary deductions for disciplinary suspensions can only be made under specified conditions.

32.     Additionally, in Illinois, the state General Assembly rejected the 2004 updates to the federal regulations that expanded the scope of permissible salary deductions and kept the scope of salary deductions for disciplinary reasons limited to safety violations of major significance only.

5

33.    Plaintiff complained about a six-day, unpaid disciplinary suspension that she believed to be in violation of the law.

34.    The Fair Labor Standards Act, 29 U.S.C. §201 *et seq.,* makes it unlawful to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to the FLSA. 29 U.S.C. § 215(a)(3).

35.    As a result of Defendant's unlawful conduct, Plaintiff has suffered lost wages and other benefits, loss of professional opportunities, emotional distress and embarrassment, damage and risk of damage to her career and reputation, damage to her standing in the community, loss of enjoyment of life, inconvenience and other non-pecuniary losses.

36.    Plaintiff demands to exercise her right to a jury trial of this matter.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and that it:

a)    Declare that Defendant's conduct was in violation of the Fair Labor Standards Act;

b)    Order Defendant to reinstate Plaintiff to a position equal to or greater than her former position;

c)    Award Plaintiff the value of all actual damages to be proved at trial, including but not limited to, the value of all compensation, benefits, and other actual damages Plaintiff has lost and will continue to lose;

d)    Award Plaintiff pre-judgment interest and additional damages to offset the tax liability on the value of compensation and benefits lost, and which she will lose in the future;

e)    Award Plaintiff reinstatement;

f)    Award Plaintiff liquidated damages in an amount equal to Plaintiff's actual damages;

g)  Award Plaintiff damages for emotional distress and compensatory damages;

h)  Award Plaintiff punitive damages;

i)  Award Plaintiff reasonable attorney's fees, costs, and disbursements;

j)  Enjoin Defendant and all officers, agents, employees and all persons in active concert
    or participation with them from engaging in any unlawful employment practice;

k)  Award Plaintiff any and all other relief as the Court deems just in the premises.


Respectfully submitted,

/s/ John P. Madden
Attorney for the Plaintiff


John P. Madden
Lindsey E. Goldberg
O'Malley & Madden, P.C.
542 So. Dearborn Street, Suite 660
Chicago, Illinois 60605
(312) 697-1382
ARDC No. 6243400
jmadden@ompc-law.com